**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swarm Technology LLC, | No. CV-21-00438-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Amazon.com Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' (collectively "Amazon") Motion to Dismiss (Doc. 29).  Plaintiff ("Swarm") filed a Response (Doc. 36), and Amazon filed a Reply (Doc. 37).  On July 9, 2021, the Court heard oral argument on the matter.  The Court now issues its decision.

## I.    Background

Swarm's Complaint alleges that Amazon infringed on two of Swarm's patents, U.S. Patent No. 9,852,004 (the "'004 Patent") and No. 10,592,275 (the "'275 Patent") (collectively, the "Patents").  (Doc. 1 at ¶¶ 137–52).  The '275 Patent is a continuation of the '004 Patent, which purports to cover a "processing architecture" whereby "autonomous co-processors . . . proactively retrieve tasks from a task pool populated by a central processing unit." '004 Patent, col. 1 ll. 15–18; *see* '275 Patent, col. 1 ll. 17–23.

Swarm alleges Amazon's "AWS IoT Core" and "AWS IoT Greengrass" products infringe on the Patents.  (Doc. 1 at ¶ 113).  These products are alleged to have infringed upon the first independent claims from both Patents.  The claim, as stated in the '004 Patent

is as follows:

> 1.  A processing system, comprising:
>
> a task pool;
>
> a controller configured to populate the task pool with a plurality of first tasks and a plurality of second tasks;
>
> a first co-processor configured to successively: retrieve a first task from the task pool; deliver the first task to the first co-processor; process the first task; generate first resulting data; and update the task pool to reflect completion of the first task, all without any communication between the first co-processor and the controller; and
>
> a second co-processor configured to successively: retrieve a second task from the task pool; deliver the second task to the second co-processor; process the second task; generate second resulting data; and update the task pool to reflect completion of the second task, all without any communication between the second co-processor and the controller;
>
> wherein the processing system is configured to dynamically accept the first co-processor, the second co-processor, and an additional co-processor into the processing system on a plug-and-play basis without any communication with the controller.

'004 Patent, col. 14 ll. 10–32.  The '275 Patent's first claim is substantially similar, except that it describes a "collaborative intelligence system" instead of a processing system, and it adds that the tasks are designed to accomplish a "common objective."  '275 Patent, col 14 ll. 24, 45–49.

The Complaint ultimately brings two claims for infringement of the '004 Patent and the '275 Patent. (Doc. 1 at ¶¶ 137–52).  Amazon moves to dismiss Swarm's Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that both Patents are ineligible under 35 U.S.C. § 101.  (Doc. 29 at 6).

## II.    Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  Dismissal of a complaint for failure to state a claim can be based on either the "lack of a cognizable legal theory or the absence

of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In reviewing a motion to dismiss, "all factual allegations set forth in the complaint 'are taken as true and construed in the light most favorable to the plaintiffs.'" *Lee*, 250 F.3d at 679 (quoting *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A patent's eligibility "can be determined at the Rule 12(b)(6) stage 'when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Universal Secure Registry LLC v. Apple Inc.*, 2021 WL 3778395, at *2 (Fed. Cir. Aug. 26, 2021) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

## III.    Patent Eligibility

Every idea is not eligible for a patent, even if it is a good one. To be eligible, a patent must provide a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "Laws of nature, natural phenomena, and abstract ideas" are not patentable because to do otherwise would inhibit the basic tools of technological advancement. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Even if the application of an abstract idea to a particular field is "novel and nonobvious in light of prior art," a claim may still be ineligible. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

In *Alice*, the Court set forth a two-step analysis to determine a patent's eligibility. 573 U.S. at 217. First, courts assess whether the "claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Id.* at 218. If so, then courts must ask the second question, whether the elements of the claim contain an "inventive concept . . . that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73 (2012)). The Court begins with step one.

- 3 -

**a. Abstract Idea**

Under this first step, courts must evaluate "the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (cleaned up). This step "depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1294 (Fed. Cir. 2020). Although *Alice* declined to define what constitutes an abstract idea, courts have held that "some fundamental economic and conventional business practices are also abstract ideas." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014). Hedging, for example, or protecting against risk, is a basic economic practice that is an abstract idea. *Bilski v. Kappos*, 561 U.S. 593, 611 (2010). Likewise, intermediated settlement, or using a third party to mitigate settlement risk, is an abstract idea. *Alice*, 573 U.S. at 220.

Much of the caselaw surrounding *Alice*, including *Alice* itself, considers whether a claimed improvement to computers or software is an abstract idea. It is certainly not the case that "all improvements in computer-related technology are inherently abstract . . . ." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). However, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment," such as a computer. *Intell. Ventures*, 792 F.3d at 1366. Claims that simply consist of "'generalized steps to be performed on a computer using conventional computer activity' are abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (quoting *Enfish*, 822 F.3d at 1338). A software claim can be non-abstract when it is "'directed to a specific implementation of a solution to a problem in the software arts,' such as an improvement in the functioning of a computer." *Id.* (quoting *Enfish*, 822 F.3d at 1338–39).

Amazon argues the '004 Patent is abstract because it simply computerizes a well-known project management technique known as a "scrum board." (Docs. 29 at 13; 42-1 at 14). A scrum board works by first having a project manager list tasks on sticky notes and

post them on one side of a board.  As the team members collect and perform each task, they individually move the notes from the "incomplete" side of the board to the other side, the "complete" side of the board.  By comparison, Amazona argues the '004 Patent's "controller" lists tasks like a project manager in a "task pool," which the first and second "co-processor" perform and then update the "task pool to reflect completion," just as a team member would move a sticky note to indicate completion.  (Doc. 29 at 13) (quoting '004 Patent, col. 14 ll. 10–32).

Swarm argues the scrum board comparison is a mischaracterization of its Patents. (Doc. 36 at 7).  It argues it is more than a scrum board because it provides a "multiprocessor system with the speed of parallel processing" without traditional downsides.  (*Id.*)  Swarm claims the Patents "involve a revolutionary new chip architecture which improves the operation of the computers and computer networks themselves."  (*Id.* at 10–11).  In addition, Swarm argues that no human would be able to "populate a task pool, proactively dispatch a plurality of respective agents from a plurality of corresponding co-processors to retrieve, complete, and update the task pool as called for in the present claims."  (*Id.* at 8). During oral argument, counsel for Swarm argued that humans could not feasibly complete the tasks as quickly as a computerized system could.  (Doc. 50 at 35–36).

The Court finds that Patents are directed towards the abstract idea of a scrum board. Although the Patents are aimed at allocating computer processing power in an efficient way, scrum boards also allocate human resources in an efficient way.  The Patents therefore are not aimed at a "specific implementation of a solution" as much as they consist of "generalized steps to be performed on a computer using conventional computer activity . . . ." *RecogniCorp*, 855 F.3d at 1326 (quoting *Enfish*, 822 F.3d at 1338).  The idea of a scrum board does not become non-abstract when limited to the computer environment.  *See Intell. Ventures*, 792 F.3d at 1366.  Although there is no doubt that computers could perform tasks organized by a scrum board more efficiently than humans, the idea itself remains abstract. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently

1    via a computer does not materially alter the patent eligibility of the claimed subject

2    matter."); s*ee also Intell. Ventures*, 838 F.3d at 1317 (finding that a claimed computerized

3    system for screening emails was analogous to a post office and abstract).

4           Here, the Court notes that Amazon argues the '004 Patent's first claim exemplifies

5    the other claims in both the Patents.  (*See* Doc. 29 at 12, 17).  Swarm does not dispute this

6    argument.  The Court, upon its own review, finds that all of the Patents' claims are

7    "substantially similar and linked to the same abstract idea."  *Content Extraction &*

8    *Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)

9    (citation omitted).  Therefore, the Court need not extend its analysis beyond the '004

10   Patent's first claim.  The Patents are directed towards an abstract idea.

11          **b. Inventive Concept**

12          After determining that a claim is abstract, step two of *Alice* asks whether the idea

13   adds something "significantly more" such that the abstract idea is transformed into an

14   eligible patent.  *Alice*, 573 U.S. at 217–18.  This concept "must be evident in the claims."

15   *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, LLC, 874 F.3d 1329, 1338 (Fed. Cir.

16   2017).  "What is needed is an inventive concept in the non-abstract application realm."

17   *SAP Am*, 898 F.3d at 1168.  Simply reciting "conventional, routine and well understood

18   applications in the art" will not suffice.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281,

19   1290 (Fed. Cir. 2018) (quoting *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371,

20   1378 (Fed. Cir. 2015)).

21          In terms of computer systems, "[m]erely reciting the use of a generic computer or

22   adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea

23   into a patent-eligible invention."  *Two-Way Media*, 874 F.3d at 1338 (citing *RecogniCorp*,

24   855 F.3d at 1327).  For an abstract claim regarding computers systems to supply an

25   inventive concept, "it must involve more than performance of 'well-understood, routine,

26   [and] conventional activities previously known to the industry.'"  *Content Extraction &*

27   *Transmission*, 776 F.3d at 1347–48 (citations omitted).  In addition, simply "claiming the

28   improved speed or efficiency inherent with applying the abstract idea on a computer [does

not] provide a sufficient inventive concept." *Intell. Ventures*, 792 F.3d at 1367.

Swarm argues the Patents' prosecution demonstrates the Patents entail an inventive concept. (Doc. 36 at 13). Swarm cites two rejections of one of its Patents' claims under 25 U.S.C. § 102 and § 103, which address whether a patent is novel or nonobvious. The fact that Swarm ultimately overcame these objections and obtained a Notice of Allowance, Swarm argues, shows that the Patents contain an inventive concept. However, the caselaw shows that whether a patent is novel or nonobvious is irrelevant to the *Alice* analysis. *SAP Am.*, 898 F.3d at 1163 (noting that novel and nonobvious patents may still be found abstract); *Two-Way Media*, 874 F.3d at 1340 ("Eligibility and novelty are separate inquiries.").

Swarm also argues that the Patents ushered in a "new parallel processing paradigm" that dramatically increases computer performance. (Doc. 36 at 9 n. 34). But, again, it is not enough that Swarm claim its Patents are novel. *See Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 577 (2013) (noting that even a "groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101 inquiry"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a new abstract idea is still an abstract idea."). The Court has already found that the Patents are abstract in that they describe a computerized scrum board, and simply applying an abstract idea to computers, standing alone, cannot be an innovative concept. *See Two-Way Media*, 874 F.3d at 1338.

Finally, Swarm argues that whether its Patents represent something that genuinely improves computer performance is a question of fact, which would preclude a finding that the Patents are ineligible on a motion to dismiss. (Doc. 36 at 15). For support, Swarm cites *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). In *Aatrix*, the Federal Circuit reversed a district court's finding that a patent was ineligible under *Alice* because there were allegations of fact that, if true, precluded dismissal. 882 F.3d at 1126. The court found the complaint had detailed problems with "computerized form file creation" and presented "specific allegations" that addressed how

the claimed patent solved those problems in prior art.  *Id.* at 1127.  In particular, the court focused on the complaint's allegations that the claim term "data file" constituted an inventive concept.  *Id.*  The data file, as alleged in the complaint, "allowed data to be imported from an end user application without needing to know proprietary database schemas and without having to custom program the form files to work with the each outside application."  *Id.* (quoting the complaint).  The court found these "allegations . . . [are] directed to an improvement in importing data from third-party software applications."  *Id.*  "These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself and not directed to generic components performing conventional activities."  *Id.*

Here, the Complaint alleges that the Patents are designed to address two problems related to parallel computer processing. First, the Complaint alleges that too much processing bandwidth was being occupied in assigning tasks to "slave" processors. (Doc. 1 at ¶ 73).  Second, many processors were being left idle while awaiting a task. (*Id.*)  Swarm emphasizes, and the Complaint alleges, that the Patents solve these problems and increase a computer system's performance.  (Doc. 36 at 14).  But, unlike in *Aatrix*, there are no allegations of a specific inventive concept within the Patents.  Although Swarm makes the conclusory assertion that its Patents contain claim elements that, when combined, "are not well-understood, routine or conventional," Swarm fails to elaborate.  (Doc. 36 at 16) (quoting *Aatrix* at 1128).  Swarm has not identified a *specific* technological improvement comparable to the data file in *Aatrix*.

The Court doubts that Swarm could point to a specific inventive concept.  It is plain from the specification of the '004 Patent that it requires "no improved computer resources . . . , just already available computers, with their already available basic functions, to use as tools in executing the claimed process."  *SAP Am.*, 898 F.3d at 1169–70.  For example, the specification contemplates a person playing video games on their laptop and tapping into the processing power on a nearby smartphone, "thereby enhancing the video game experience."  '004 Patent, col. 12 ll. 20–21.  This appears to be directed towards "generic

1    components," such as laptops and smartphones, "performing conventional activities," such
2    as playing video games.  *Aatrix* 882 F.3d at 1127.  Swarm may argue that the allocation of
3    processing power between the laptop and smartphone is the specific inventive concept, but
4    this allocation is based solely upon the abstract idea of a scrum board.  At this stage in the
5    *Alice* analysis, "[w]hat is needed is an inventive concept in the non-abstract application
6    realm."  *SAP Am*, 898 F.3d at 1168.  Without specific and concrete allegations of specific
7    improvements to computer technology, all Swarm has alleged is an improvement to the
8    speed and efficiency of computer systems stemming from the implementation of an
9    abstract idea.  The improved efficiencies from the application of an abstract idea are not an
10   inventive concept.  *Intell. Ventures*, 792 F.3d at 1367.

11          Swarm has not made specific factual allegations that, if taken as true, would
12   preclude finding the Patents ineligible.  Therefore, the Court finds that the Patents do not
13   contain an inventive concept.  It follows that the Patents are ineligible under 35 U.S.C. §
14   101.

15   **IV.    Conclusion**

16          Having found that the Patents are ineligible, the Court will grant Amazon's Motion
17   to Dismiss.  Swarm requested leave to amend its Complaint, in the event that the Court
18   granted Amazon's Motion.  (Doc. 36 at 21).  "The court should freely give leave when
19   justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Aatrix*, 882 F.3d at 1127 (noting that
20   an amended complaint may contain allegations that influence a court's eligibility analysis).
21   If Swarm believes it may amend its pleadings to state a viable claim, then it may file a
22   motion for leave to file a first amended complaint to explain how it could address the
23   deficiencies identified in this Order.

24          Accordingly,

25          **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 29) is
26   **granted**.  The Court will dismiss Plaintiff's Complaint, which is based upon patents that
27   are ineligible under 35 U.S.C. § 101.

28          **IT IS FURTHER ORDERED** that if Plaintiff believes it may cure the deficiencies

noted in this Order by amendment, it may file a motion for leave to file a first amended complaint within thirty (30) days of the date of this Order.

IT IS FINALLY ORDERED that if Plaintiff fails to file a motion for leave to file a first amended complaint within thirty (30) days of the date of this Order, the Clerk of Court shall kindly terminate this matter.

Dated this 20th day of September, 2021.

Honorable Diane J. Humetewa
United States District Judge