Andrew M Federhar  (No. 006567)
Jessica A. Gale (No. 030583)
SPENCER FANE LLP
2415 E. Camelback Road, Suite 600
Phoenix, Arizona  85016
T: +1.602.333.5430; F: +1.602.333.5431
afederhar@spencerfane.com
jgale@spencerfane.com

Maximilian A. Grant (*pro hac vice*)
Adam M. Greenfield (*pro hac vice*)
Gabriel K. Bell (*pro hac vice*)
David A. Zucker (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, D.C. 20004
T: +1.202.637.2200; F: +1.202.637.2201
max.grant@lw.com
adam.greenfield@lw.com
gabriel.bell@lw.com
david.zucker@lw.com

Kimberly Q. Li (*pro hac vice*)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
T: +1.617.948.6000; F: +1.617.948.6001
kimberly.li@lw.com

*Attorneys for Defendants Amazon.com, Inc.*
*and Amazon Web Services, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swarm Technology, LLC, | Case No. 2:21-cv-00438-DJH |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT** |
| v. | **Oral Argument Requested** |
| Amazon.com, Inc., and Amazon Web Services, Inc., | |
| Defendants. | |

# Table of Contents

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

    A.      The Asserted Patents ..................................................................... 2

    B.      This Court's Dismissal for Lack of Patent-Eligible Subject
           Matter ............................................................................................. 4

    C.      Swarm's Motion for Leave to File an Amended Complaint .................... 5

III.    LEGAL STANDARDS ............................................................................... 6

    A.      Motions for Leave to Amend .............................................................. 6

    B.      Patent Eligibility Under 35 U.S.C. § 101 .............................................. 7

IV.     NO AMENDMENT CAN CHANGE THIS COURT'S HOLDING
       THAT THE ASSERTED PATENT CLAIMS ARE INELIGIBLE
       UNDER § 101 ............................................................................................. 8

    A.      Swarm Does Not, And Cannot, Contest that Its Patent Claims
           Are All Materially the Same for Purposes of § 101 ................................... 8

    B.      Swarm Does Not, And Cannot, Argue That The FAC Saves
           Its Patent Claims From Abstraction At *Alice* Step One .............................. 9

    C.      Swarm Does Not, And Cannot, Identify Anything Inventive
           or Create a Fact Issue at *Alice* Step Two ..................................... 13

        1.      Every Purported Inventive Concept in Swarm's
               Motion Stems Directly From the Abstract Idea ............................. 13

        2.      The FAC Does Not Otherwise Identify Anything
               Inventive ................................................................................ 16

        3.      Swarm's Reliance on Declarations Outside the
               Pleadings Is Improper And Unavailing ......................................... 17

V.      CONCLUSION ........................................................................................ 17

CERTIFICATE OF SERVICE ................................................................................. 19

Case No. 2:21-cv-00438-DJH          i          Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

## <u>Table of Authorities</u>

### CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018)..................................................................15

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1344 (Fed. Cir. 2013).............................................................3, 10

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016)............................................................8, 17

*Aftechmobile Inc. v. Salesforce.com, Inc.*,
   853 F. App'x 669 (Fed. Cir. 2021)..............................................................7

*Alice Corp. v. CLS Bank International*,
   573 U.S. 208 (2014) .................................................................................1, 7

*Boom! Payments, Inc. v. Stripe, Inc.*,
   839 F. App'x 528 (Fed. Cir. 2021)............................................................15

*British Telecomms. PLC v. IAC/InterActiveCorp*,
   813 F. App'x 584 (Fed. Cir. 2020)..............................................................9

*BSG Tech LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..................................................................13

*Chamberlain Grp. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019)..................................................................13

*Cisco Systems, Inc. v. Uniloc 2017 LLC*,
   813 F. App'x 495 (Fed. Cir. 2020)............................................................15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)..................................................................12

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
   911 F.2d 242 (9th Cir. 1990) ........................................................................6

*Data Scape Ltd. v. W. Digital Corp.*,
   816 F. App'x 461 (Fed. Cir. 2020).................................................6, 8, 15

*Dropbox, Inc. v. Synchronoss Technologies, Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020).......................................................15, 16

*FairWarning IP, LLC v. Iatric Sys.*,
   839 F.3d 1089 (Fed. Cir. 2016)..................................................................13

PH 635497.1

*Fast 101 Pty Ltd. v. CitiGroup Inc.*,
   834 F. App'x 591 (Fed. Cir. 2020)..........................................................6, 8, 15, 17

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021)..................................................................................7

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016).........................................................................7, 13

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ...................................................................................6

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016)................................................................................8

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).......................................................................passim

*Simio, LLC v. FlexSim Software Prod., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020).......................................................................passim

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...........................................................7, 10, 16, 17

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021)...........................................................................7, 14

*White v. Dunbar*,
   119 U.S. 47 (1886) ...................................................................................................6

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) .......................................................................7, 16, 17

PH 635497.1

Defendants Amazon.com, Inc., and Amazon Web Services, Inc. (collectively, "Amazon") respectfully oppose Plaintiff Swarm Technology, LLC's ("Swarm's") motion for leave to file an amended complaint. D.I. 66 ("Motion"). This Court correctly dismissed this suit for lack of patent eligible subject matter under 35 U.S.C. § 101, D.I. 64 ("Order"), and Swarm's amended complaint, D.I. 66, Ex. 2 ("FAC"), does not change that conclusion. Amendment would be futile as a matter of law. Swarm's Motion should be denied.

## I.   INTRODUCTION

This Court correctly held that Swarm's asserted patent claims lack patent-eligible subject matter under *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and its progeny. The Court "doubt[ed]" that any additional pleading could change that outcome, but permitted Swarm to try to address the deficiencies identified in the Order. Order at 8-10. Remarkably, Swarm essentially ignores this Court's Order and instead reargues points that the Court already rejected—confirming that amendment would be futile. The Federal Circuit has repeatedly held that district courts properly deny leave to amend where, as here, doing so would be futile because the asserted patent claims lack eligible subject matter. *See, e.g.*, *Simio, LLC v. FlexSim Software Prod., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020). Swarm's proposed pleading changes nothing.

At *Alice* step one, this Court correctly held that the claims are directed to the commonplace idea of a scrum board and implementing it in a computer environment does not make the claims non-abstract. Order at 4-6. Swarm itself does not even contend that its FAC changes that conclusion. Swarm's Motion is notable for its failure to cite the FAC *a single time* in its step one analysis. Motion at 11-17. Instead, Swarm reargues that the claims are not abstract because they purportedly include a specific technological improvement. This Court correctly rejected that argument, which remains unchanged.

At *Alice* step two, every purported inventive concept identified in the Motion stems from using the abstract idea of a scrum board with conventional computers. Motion at 7-11. As this Court correctly held, that cannot provide an inventive concept. Order at 6-9. Swarm makes no attempt to address this defect or explain why its FAC warrants a different

Case No. 2:21-cv-00438-DJH          1          Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1   outcome.  For good reason.  The patents, on their face, fail to claim patent-eligible subject

2   matter, and amending the complaint cannot change that.  Swarm's FAC, by failing to

3   identify anything inventive apart from the abstract idea, confirms that amendment would

4   be futile.  Nor do the declarations attached to its Motion alter the analysis or preclude

5   ineligibility because they too fail to identify anything inventive apart from the abstract idea.

6          The Court correctly dismissed this suit.  Swarm's Motion should be denied.

7   **II.     FACTUAL BACKGROUND**

8          **A.     The Asserted Patents**

9          The asserted patents—U.S. Patent Nos. 9,852,004 ("the '004 patent") and

10   10,592,275 ("the '275 patent") (asserted in the original complaint) and U.S. Patent No.

11   9,146,777 ("the '777 patent") (which Swarm now attempts to add in its FAC)— are related

12   and share largely identical specifications.  The asserted patents describe a system with

13   "autonomous co-processors configured to proactively retrieve tasks from a task pool

14   populated by a central processing unit."  '004 patent at 1:16-18.[1]

15          The specification explains that parallel processing using

16   multiple co-processors is nothing new: "A ***typical*** multiprocessor

17   system includes a central processing unit ('CPU')" that "distributes

18   the tasks to co-processors."  *Id.* at 1:56-59.  The patents' only

19   purported improvement is to collect the necessary tasks in a "task

20   pool," and then the co-processors autonomously retrieve and

21   complete the tasks. The specification describes this concept at a high

22   level of generality as a series of basic steps: (1) the controller



23   populates the task pool, (2) the co-processors "proactively" and "autonomously" retrieve

24   and complete tasks from the pool, and (3) the co-processors indicate completion of the

25   tasks, as depicted in Figure 6.  *See also, e.g.*, *id.* at 2:11-23, 12:25-15-56.

26          The specification admits, repeatedly and expressly, that the purported invention

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[1] Citations are only to the specification of the '004 patent, and citations to the other patents
are omitted for readability.  All emphases added unless otherwise noted.

PH 635497.1

does not require any improved computer technology.  Rather, the entire "system … may be implemented on a personal computer" or *any* "general purpose" computer.  *Id.* at 5:19-20, 2:47.  In fact, "the system may be implemented *retroactively* on *any* computer or computer network" that is "configured to implement the functionality." *Id.* at 5:45-49.  The specification admits that each component can use generic technology.  For example, the CPU (or "controller") that populates the task pool "may be *any* personal computer" or "*any* … processor" that can "execute a software program," including off-the-shelf processors such as "an Intel® Pentium®." *Id.* at 5:17-23; *see id.* at 2:12-13.  And the co-processors (also called "solidarity cells") that perform the tasks can be any "general purpose … processor." *Id.* at 2:47-50,  5:63-67; *see id.* at 4:24-25 ("*any* presently known or later-developed computer architecture").

Nor is any particular implementation required.  The specification states that the purported invention does not require any "particular manner" for "performing the … processing." *Id.* at 5:37-39.  The "task pool" can be any hardware or software for storing tasks, and the "agent" can be any "software module, analogous to a network packet," that co-processors use to access the pool. *Id.* at 6:56-7:7, 3:14-15.[2]  The "tasks" themselves are unspecified—they can be anything, require no particular programming, and can be described at a high "level of abstraction." *Id.* at 3:36-38.  To the extent that the specification includes details absent from the claims (and which are, therefore, irrelevant to the § 101 analysis as a matter of law[3]), the specification emphasizes that the purported invention is "not … limited to the particular embodiments disclosed." *Id.* at 14:4-5.

The patents' claims are no more specific.  There are seven independent claims; each recites, in generic and functional terms, steps for autonomous processors to retrieve and

---

[2] Swarm itself has defined "task pool" as follows: "'Task Pool' means any list, database, memory module, cache, random access memory, or other data or memory structure or construct, whether implemented in hardware, firmware, software, and/or executable code, that is configured to hold, store, monitor, track, display, populate with, and/or update a plurality of individual tasks." D.I. 42-1 at 11.

[3] *See, e.g.*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1344, 1345 (Fed. Cir. 2013).

Case No. 2:21-cv-00438-DJH          3          Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

complete tasks from a task pool. '004 patent cls. 1, 3; '275 patent cls. 1, 6, 11; '777 patent cls. 1, 14. Independent claim 1 of the '004 patent (which is representative) recites a computer system in which (1) a "controller" populates a "task pool" with "tasks," (2) individual processors ("co-processors") retrieve and complete tasks from the task pool, and (3) processors can be added or removed as needed. *See* Order at 2; D.I. 29 at 4.

Claim 1 of the '275 patent is the same, except for its labeling of the claimed system ("collaborative intelligence system") and stating that the processors "work together" to complete a "common objective." '275 patent cl. 1 at 14:24, 14:45-49. Likewise, claim 1 of the '777 patent is the same, except stating that the controller is a "CPU," giving the co-processor a label ("solidarity cell"), and stating that it proactively (via an "agent") retrieves tasks ("threads") that the co-processor may perform. '777 patent cl. 1 at 7:41-8:8.[4] The other independent claims and the dependent claims include other elements related to collaborative processing and conventional components. *See* '004 patent cls. 2-12; '275 patent cls. 2-17; '777 patent cls. 2-14; *infra* at 9; D.I. 29 at 7, 12-13.

## B. This Court's Dismissal for Lack of Patent-Eligible Subject Matter

Swarm sued Amazon on March 15, 2021, asserting infringement of the '004 and '275 patents. Amazon moved to dismiss because the patents lack patent-eligible subject matter under § 101, and the Court held a hearing. *See* D.I. 29, 37, D.I. 42-1, 50.

On September 20, 2021, the Court granted the motion to dismiss, applying the Supreme Court's two-step framework of *Alice*. Order at 1-10.[5] First, the Court held that the claims are directed to the abstract idea of a scrum board—a commonplace concept that that humans use in managing efficient task completion. *Id.* at 4-6. The Court explained:

> A scrum board works by first having a project manager list tasks on sticky notes and post them on one side of a board. As the team members collect and perform each task, they individually move the notes from the 'incomplete'

---

[4] The specification uses the terms "co-processor" and "solidarity cell" interchangeably, *see, e.g.*, '004 patent at 2:47; FAC ¶ 102, and uses the term "thread" as synonymous with one or more "tasks," *see, e.g.*, '004 patent at 1:59-61, 2:14, 3:25-28, 5:62-63, 7:9-10, 7:65.

[5] The Court held that claim 1 of the '004 patent is representative for purposes of § 101 eligibility because there are no meaningful differences among the claims—and "Swarm does not dispute this." D.I. 64 at 6.

Case No. 2:21-cv-00438-DJH          4          Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

side of the board to the other side, the 'complete' side of the board.

*Id.* at 5.  The Court recognized that the patents do nothing more than use this familiar concept in a particular technological context: the computer "controller" (like the project manager) lists tasks in the "task pool" (like posting sticky notes on the scrum board) and the "co-processors" (like the team members) autonomously retrieve and complete tasks and indicate completion.  *Id.*  The Court recognized that the claims "are aimed at allocating computer processing power in an efficient way" just as "scrum boards … allocate human resources in an efficient way."  *Id.* at 5.  Thus, the Court determined that, even if it was a "good" idea, using it for computer processing does not make it less abstract.  *Id.* at 3.

Second, the Court held that the claims add nothing inventive to the scrum board idea and there were no relevant factual allegations precluding ineligibility.  *Id.* at 6-9.  As this Court explained, "all Swarm has alleged is an improvement to the speed and efficiency of computer systems stemming from the implementation of [the abstract idea]."  *Id.* at 9.  And "[i]t is plain from the [patent] specification" that the claims require no improved computer technology, just already available computers.  *Id.* at 8.  Although this Court "doubt[ed] that Swarm could point to a specific inventive concept," it permitted Swarm to seek leave to file an amended complaint and attempt to "explain how it could address the deficiencies identified in this Order."  *Id.* at 9.

### C.    Swarm's Motion for Leave to File an Amended Complaint

On October 20, 2021, Swarm moved for leave to file a FAC.  Remarkably, Swarm made no effort to address the deficiencies the Court's dismissal identified.  Every purported inventive concept that Swarm's Motion points to stems directly from using the abstract scrum board idea in conventional computer technology.  *See* Motion at 7-11.  Likewise, although the FAC inserted an additional 30 pages (FAC ¶¶ 3-4, 124-253) and a third patent (the '777 patent) that is materially the same as the other two (FAC ¶¶ 114-118, 201-253), it nowhere identifies an inventive concept apart from the abstract scrum board idea.[6]

---

[6] This Court did not grant Swarm leave to attempt to add another patent.  Regardless, doing so cannot cure the § 101 deficiency in the '004 and '275 patents.

Case No. 2:21-cv-00438-DJH          5        Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1      The FAC admits that the patents' purportedly "new" concept is for "autonomous

2  agents" to "proactively seek new tasks, without having to communicate directly with" a

3  central controller.  *Id.* ¶ 77.  In addressing claim 1 of each patent, the FAC (repeatedly)

4  relies on the scrum board idea as providing the purported inventive concept.  *See id.* ¶¶ 124-

5  147 ('004), 159-190 ('275), 201-244 ('777).  The FAC does not meaningfully address the

6  other patent claims, merely quoting the claim language and asserting in conclusory fashion

7  that they recite activities that are not "well-understood, routine, and conventional."  *Id.*

8  ¶¶ 148-158 ('004), 191-200 ('275), 244-253 ('777).  But Swarm does not contest that (as

9  the specification admits) the claims can be implemented using conventional computer

10  technology—"*any* personal computer" or *any* "general purpose" computer.  '004 patent at

11  5:19-23, 2:47.  Indeed, the FAC admits (in a cited article) that Swarm implemented its

12  teamwork idea using "off-the-shelf components."  FAC, Ex. R at 443.[7]

13  **III.    LEGAL STANDARDS**

14      **A.    Motions for Leave to Amend**

15      Courts deny leave to amend where it would be futile—where the "complaint could

16  not be saved by any amendment."  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532

17  (9th Cir. 2008); *see also Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911

18  F.2d 242, 247 (9th Cir. 1990) ("no amendment would have been able to cure [the] defect").

19  In patent suits, courts properly (and routinely) grant motions to dismiss and deny leave to

20  amend where the asserted patents lack patent-eligible subject matter under § 101 as a

21  matter of law.  *See Simio*, 983 F.3d at 1364 (affirming district court's grant of motion to

22  dismiss under § 101 and denial of leave to amend); *Fast 101 Pty Ltd. v. CitiGroup Inc.*,

23  834 F. App'x 591, 594 (Fed. Cir. 2020) (same); *Data Scape Ltd. v. W. Digital Corp.*, 816

24  F. App'x 461, 464-65 (Fed. Cir. 2020) (same, applying Ninth Circuit law).

25  _____

26  [7] Swarm's Motion wrongly states that "[a]ny discussion of patent claims herein should not
be used for infringement, validity, or claim construction purposes."  Motion at 4 n.1.

27  Swarm's representations on claim scope are of course binding, *cf. White v. Dunbar*, 119
U.S. 47, 51-52 (1886) ("meaning of the claim" cannot be changed "like a nose of wax,

28  which may be turned and twisted in any direction"), but this statement telegraphs Swarm's
improper intent to interpret the patent claims differently if the case proceeds.

PH 635497.1

**B.    Patent Eligibility Under 35 U.S.C. § 101**

The Supreme Court's two-step *Alice* framework governs whether computer-based claims are ineligible under § 101.  Order at 3.  At step one, the Court determines whether the patent claims are, at root, directed to an abstract idea despite reciting computer features.  *Alice*, 573 U.S. at 218.  At step two, the Court determines whether the other claim elements, individually or collectively, add "significantly more" to the abstract idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application."  *Id.* at 217-22.  At both steps, implementing an abstract idea in a "'particular … technological environment'" using conventional components does not make the claims "'any less abstract'" and contributes nothing inventive.  *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) ("*Symantec*") (citation omitted).  Nor may claims simply recite "generic functional language to achieve [the] purported solutions" without claiming "'how the desired result is achieved.'"  *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (citation omitted).  And use of an abstract idea—even if "new" and "brilliant"—cannot make the claims non-abstract or inventive.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018).

Patent-ineligibility is a threshold "question of law" that the Federal Circuit and district courts "frequently" resolve on a Rule 12 motion, where—as is often the case—there are no relevant factual disputes.  *Id.* at 1166.  The Federal Circuit has repeatedly reiterated that principle in recent months.  *See, e.g.*, *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1348-58 (Fed. Cir. 2021) (affirming district court's 12(b)(6) dismissal under § 101); *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021) (same); *Simio*, 983 F.3d at 1358 (same); *Aftechmobile Inc. v. Salesforce.com, Inc.*, 853 F. App'x 669, 669-70 (Fed. Cir. 2021) (same); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1367 (Fed. Cir. 2021) (reversing denial of dismissal under § 101).  Claims that are directed to an abstract idea (at step one) and add nothing inventive to that idea (at step two) are ineligible under § 101 as a matter of law, and any attempt to plead around that would be

futile.  *See, e.g.*, *Simio*, 983 F.3d at 1364; *Fast 101 Pty*, 834 F. App'x at 594; *Data Scape*, 816 F. App'x at 464-65.

## IV.   NO AMENDMENT CAN CHANGE THIS COURT'S HOLDING THAT THE ASSERTED PATENT CLAIMS ARE INELIGIBLE UNDER § 101

This Court correctly held that Swarm's patent claims are ineligible under § 101 because they are directed to an abstract idea and add nothing inventive.  Swarm's proposed FAC does not, and cannot, change that conclusion.  Because amendment would be futile, Swarm's Motion for leave to amend should be denied.

### A.   Swarm Does Not, And Cannot, Contest that Its Patent Claims Are All Materially the Same for Purposes of § 101

This Court correctly held that claim 1 of the '004 patent is representative for purposes of § 101 eligibility because all of the asserted patent claims "are 'substantially similar and linked to the same abstract idea.'"  Order at 6 (citation omitted).  As Amazon explained, and this Court determined "upon its own review," all of the patent claims are directed to the same abstract idea (a scrum board) and at most include inconsequential differences (that either stem from the scrum board idea or at most recite conventional components).  *See* D.I. 29 at 12-13; D.I. 42-1 at 14-15; Order at 6.  And "Swarm d[id] not dispute" that claim 1 of the '004 patent is representative.  Order at 6.

Even now, Swarm does not argue that there are any meaningful differences among the claims for § 101 purposes.  Instead, Swarm acknowledges that "[t]he analysis set forth [in its Motion] with respect to the '004 claims also applies to the claims of the '275 and '777 Patents."  Motion at 12 n.3.  In a footnote, Swarm nonetheless asserts, without analysis, that its FAC "thoroughly distinguishes the claims from one another."  *Id.* at 7 n.2.  But Swarm fails to elaborate or attempt to explain why any differences among the claims are *relevant* for purposes of § 101.  Consequently, this Court (still) need not analyze each claim separately.  *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1256 n.1 (Fed. Cir. 2016) (no need to separately address claims where patentee "fail[s] to present 'any meaningful argument for the[ir] distinctive significance'"); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. 2016) ("no need to

PH 635497.1

1    address … claims individually" as "there is … no contention that the claims differ in any

2    manner that is material to … patent-eligibility"); *British Telecomms. PLC v.*

3    *IAC/InterActiveCorp*, 813 F. App'x 584, 587-88 (Fed. Cir. 2020) (patentee "forfeit[s] its

4    ability to argue that other claims are separately patent eligible" by "not present[ing] any

5    'meaningful argument for the[ir] distinctive significance'") (citation omitted).

6        Swarm's unsanctioned attempt to add a third, related, patent (the '777 patent) does

7    not change that conclusion.  That patent has a similar specification and materially the same

8    claims, which are directed to the same abstract idea of a scrum board.  For example, claim

9    1 of the '777 patent, like the other patents' claims, recites a controller ("CPU") that

10   populates tasks in a "task pool" and a co-processor ("solidarity cell") that proactively (via

11   an "agent") retrieves tasks ("threads") that the co-processor can perform.   The other

12   independent claim (claim 14) of the '777 patent is materially the same, except reciting a

13   second generic co-processor.  Likewise, most of the dependent claims recite aspects of the

14   same abstract idea in highly generic terms: (1) notifying the controller when tasks are

15   completed ('777 patent cl. 2); (2) retrieving and performing (unspecified) types of tasks

16   that the co-processors can perform (*id.* cls. 3-7); (3) using an additional co-processor (*id.*

17   cl. 12); and (4) retrieving additional tasks (*id.* cl. 13).  Those are, again, analogous to the

18   types of activities that humans perform when using a scrum board.  The other dependent

19   claims recite storing data in an unspecified "memory" location, "data structure," or

20   "hardware" (cls. 8-11)—which are wholly conventional.  *See*, *e.g.*, '004 patent at 5:49-56

21   (data can be stored in any type of memory, "[a]s known in the art"); *id.* at 6:56-7:7 (task

22   pool stored in any conventional software and/or hardware).  Notably, Swarm itself nowhere

23   argues that the '777 patent claims are separately eligible under § 101.  They are not.

24       Nothing in the Motion or FAC changes this Court's conclusion that all of the

25   asserted patent claims are substantially similar and directed to the same abstract idea.  But

26   the claims are ineligible even if analyzed separately.  *See* D.I. 29 at 7, 12-15.

27       **B.    Swarm Does Not, And Cannot, Argue That The FAC Saves Its Patent
           Claims From Abstraction At *Alice* Step One**

28   This Court correctly held that the asserted patent claims are directed to the abstract

Case No. 2:21-cv-00438-DJH            9       Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1    idea of a scrum board.  Order at 4-6.  As the Court explained, the computer "controller"

2    (like a human project manager) lists tasks in the "task pool" (like the manager posting

3    sticky notes on the scrum board) and the "co-processors" (like the human team members)

4    autonomously retrieve and complete tasks and indicate completion.  *Id.* at 5.  The claims

5    fail to provide any specific technological improvement because the purported benefits

6    (greater efficiency in distributing and completing tasks) stem from use of the abstract idea

7    itself—which cannot make the claims eligible.  *Id.*  As this Court held, the claims "are

8    aimed at allocating computer processing power in an efficient way" just as "scrum

9    boards … allocate human resources in an efficient way."  *Id.*  Even if this was a "new" or

10   "brilliant" idea (it is not), it is abstract and, therefore, cannot confer eligibility for patent

11   protection even if used in a computer context.  *SAP*, 898 F.3d at 1163; *see* Order at 7.

12           Swarm's Motion does not contend that any of the additional language in its FAC

13   warrants revisiting, let alone changing, this Court's conclusion at *Alice* step one.  Indeed,

14   in its step one analysis, Swarm's Motion fails to cite its FAC *a single time*.  Motion at 11-

15   17.  Instead, Swarm repeats four arguments that the Court previously analyzed and rejected.

16   Those arguments still fail.

17           First, Swarm again attempts to cast its claims as providing a new "chip architecture."

18   *Id.* at 12, 16-17.  That argument remains meritless.  D.I. 37 at 5-6.  The claims say nothing

19   about a "chip architecture," let alone an improved one.   Swarm cannot rely on such

20   unclaimed details to supply the patent-eligible content—"the important inquiry for a § 101

21   analysis is to look to the claim."  *Accenture*, 728 F.3d at 1345.  In *Accenture*, for example,

22   "[a]lthough the specification … contain[ed] very detailed software implementation

23   guidelines, the system claims themselves only contain generalized software components

24   arranged to implement [the] abstract concept on a computer."  *Id.*  Thus, those unclaimed

25   details—including a purportedly new "architecture"—did not make the claims eligible.  *Id.*;

26   *see* D.I. 37, Appendix C (U.S. Pat. No. 7,013,284, at 8:28-29).  Similarly, in *Two-Way*

27   *Media*, the Federal Circuit rejected the patentee's reliance on an "a purported innovative

28   'scalable architecture'" because that was not in the claims.  874 F.3d at 1338-39.  Likewise,

Case No. 2:21-cv-00438-DJH            10       Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1    Swarm's unclaimed "chip architecture" does not save its claims.

2        The asserted patents in this case are more abstract than the ones in those cases

3    because Swarm's specification does not even mention a "chip architecture."   The

4    specification's reference to a "computing architecture" is nothing more than "parallel

5    processing" (i.e., using multiple co-processors to divvy up tasks), which even the patents

6    admit was "typical."  '004 patent at 1:50-59.  In fact, the specification expressly refutes

7    Swarm's argument because no new "computer architecture" is needed—the patents'

8    purportedly inventive features "may be incorporated into ***any presently known*** or later-

9    developed ***computer architecture***."  *Id*. at 4:24-26:4.  That admission is unequivocal and

10   dispositive: the purported invention does *not* provide or claim a new "computer

11   architecture."  *Id.*

12       What Swarm really means by "architecture" is that the controller provides tasks via

13   a task pool and co-processors proactively seek out tasks to complete.  But that is, again,

14   the abstract idea.  For example, Swarm depicts this "architecture" as follows, using clip art

15   of (unidentified and non-specific) processing and memory components:



**FIG. 2** – New Architecture

20   Motion at 3.  Swarm's depiction highlights why the claims are directed to an abstract idea,

21   as the components are directly analogous to their human counterparts using a scrum board:



27   *See also* D.I. 42-1 at 14-15.  Moreover, as discussed, the specification repeatedly states that

28   the controller, task pool, and co-processors can be implemented using any combination of

Case No. 2:21-cv-00438-DJH        11        Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

software and/or hardware, with "any personal computers" or any other conventional computer components. *Supra* at 2-3; Order at 5-6, 8-9. Swarm's rehashed attempt to inflate its claims into an innovative "architecture" still fails. This Court properly rejected that argument.

Second, relatedly, Swarm's passing reference to three dependent claims (claims 4 and 5 of the '004 patent and claim 5 of the '275 patent), *see* Motion at 16-17, does not make those claims non-abstract. Those claims recite implementing the claimed functions on a "monolithic integrated circuit." But, as the specification makes plain, that is a conventional computer component. *See, e.g.*, '004 patent at 11:37-40 (functionality can be implemented on standard computer devices "some or all of which include an associated or embedded microcontroller, such as an integrated circuit (IC) chip or other components which embodies processing capacity"), 13:4-5 (describing an embodiment in which "the controller and the task pool reside on a monolithic integrated circuit (IC)" without describing any specific way of implementing that functionality). Indeed, the specification admits that the purported invention can be implemented on a single integrated component or using separate components—the number or arrangement of hardware is not the purported advance. For example, the "task pool" may be implemented in software, it "may be physically located with the CPU in the … monolithic IC, or it may be implemented as a stand-alone IC." *Id.* at 6:56-7:7. Thus, the patents simply implement the abstract scrum board idea in the computer context. This Court correctly held that those other claims add nothing non-abstract. *See* D.I. 29 at 12-15; Order at 6.

Third, Swarm repeats its argument that "[h]umans are physically incapable" of processing data in the same way as computers. Motion at 2. As before, that misses the point. As Amazon explained (D.I. 37 at 2-3), the fact that the claims are *analogous* to longstanding human activity is a key indication the claims are abstract, even if "human minds are unable to process and recognize the stream of bits" in exactly the same way as a computer. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014); *see also FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d

Case No. 2:21-cv-00438-DJH         12         Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1089, 1098 (Fed. Cir. 2016) ("[T]he inability for the human mind to perform each claim step does not alone confer patentability."). This Court correctly agreed. Order at 5.

Fourth, Swarm argues that the claims purportedly provide increased efficiency because the central processor does not have to distribute the tasks and the co-processors do not have to wait for the tasks to be assigned. Motion at 14-16. Once again, those "benefits … flow from performing [the] abstract idea" itself and are the same in any context—including the human analogue discussed—and, therefore, do not make the claims non-abstract. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018). Swarm's FAC admits this concept can be employed in various technological contexts, including robotics, navigation, and "parallel processing." https://vimeo.com/177881911 at 3:21-3:58 (cited at FAC ¶ 87). Employing this concept in one "particular technological environment"—parallel processing—does not make the claims "any less abstract." *Symantec*, 838 F.3d at 1319. Because the purported advance is an abstract idea, "[n]o matter how much of an advance … the claims recite" (*SAP*, 898 F.3d at 1163), this Court correctly found the claims are directed to an abstract idea at step one.

## C. Swarm Does Not, And Cannot, Identify Anything Inventive or Create a Fact Issue at *Alice* Step Two

Swarm renewed arguments fare no better at *Alice* step two. This Court correctly held that Swarm's patent claims add nothing inventive to the abstract idea of a scrum board and merely implement it using conventional computer components. Swarm's Motion and FAC do not, and cannot, change that conclusion. Indeed, Swarm never directly "address[es] the deficiencies identified in this [Court's] Order." Order at 9.

### 1. Every Purported Inventive Concept in Swarm's Motion Stems Directly From the Abstract Idea

At step two, the claims must add something inventive "apart from" the abstract idea. *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). As the Federal Circuit held, "[w]hether the claim 'supplies an inventive concept that renders [it] significantly more than an abstract idea to which it is directed is a question of law'"— "[a]nd, critically, 'a claimed invention's use of the ineligible concept to which it is directed

PH 635497.1

cannot supply the inventive concept.'" *Simio*, 983 F.3d at 1363 (quoting *BSG*, 899 F.3d at 1290); *see also, e.g.*, *Universal Secure Registry*, 10 F.4th at 1350 (use of "abstract idea" in computer system "cannot serve as an inventive concept"). Here, Swarm's Motion identifies nothing (and there is nothing) inventive apart from the abstract idea. Each concept that Swarm relies on stems directly from using the abstract scrum board concept with conventional computers and, therefore, provides nothing inventive. Order at 6-9.

Swarm contends that its FAC "specifically alleges" three purportedly inventive concepts: (1) a "controller" that populates the "task pool" with tasks (also referred to as "threads"), (2) "co-processors" (also referred to as "solidarity cells") that "retrieve" tasks from the task pool (via an "agent") that the co-processors are able to perform, and (3) additional co-processors can be "dynamically" added on a "plug-and-play" basis. Motion at 7-11.[8] For each, Swarm repeats in rote conclusory fashion, without meaningful analysis, that those features are "inventive," "unconventional," and "'more than well-understood, routine, and conventional activities previously known to the industry.'" *Id.* (quoting FAC ¶¶ 137, 142, 168, 218-19). But those are the same purported advances that this Court already considered and properly rejected because they stem directly from the abstract idea of a scrum board, which cannot supply "an inventive concept" as a matter of law. *See* Order at 6-9.

The Federal Circuit has held that precisely such allegations in a proposed amended complaint do not preclude finding the claims ineligible on a Rule 12(b)(6) motion. For example, in *Simio*, the Federal Circuit held that the district court properly "disregard[ed]" assertions in a proposed amended complaint that "a feature 'improves the functioning and operations of the computer'" because they merely "repackage[d] assertions of non-abstractness [that were] already rejected as a matter of law." 983 F.3d at 1365. Thus, the Federal Circuit affirmed the district court's dismissal under § 101 and "the court's futility-based denial" of leave to amend. *Id.* at 1364. The Court should deny leave to amend here

---

[8] In its step two analysis (Motion at 7-11), Swarm addresses only claim 1 from each patent, which confirms that there are no meaningful differences among the claims.

1  for the same reason—as in *Simio*, "[t]his is … not a case in which [the] complaint's
2  allegations 'prevent resolving the eligibility question as a matter of law.'"  *Id.* (quoting
3  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir.
4  2018)); *see also, e.g.*, *Fast 101 Pty*, 834 F. App'x at 594 (affirming dismissal and denial of
5  amendment); *Data Scape*, 816 F. App'x at 464-65 (same, applying Ninth Circuit law).

6        Similarly, in *Cisco Systems, Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498 (Fed.
7  Cir. 2020), the patentee alleged that "'the patent's disclosure and claims are drawn to
8  solving a specific, technical problem arising from the evolution of ad-hoc radio
9  communication systems'" and "'were not well-understood, routine or conventional.'"  But
10 the Federal Circuit held that "[t]hese are not factual allegations; they are sweeping
11 conclusory statements and the district court properly concluded that they did not preclude
12 dismissal" under § 101.  *Id.* at 498-99 (applying Ninth Circuit law).  And, in *Dropbox, Inc.*
13 *v. Synchronoss Technologies, Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020), the complaint
14 alleged that the patents solved "technological problems [in computer encryption],
15 … improved the art, 'represented a significant advance over existing approaches[,] and
16 were not well-known, routine, or conventional in the field' at the time of patenting."  But
17 those "provide[d] no more than a series of legal conclusion[s] about the § 101 analysis"
18 and such "conclusory pleadings are insufficient to survive a motion to dismiss."  *Id.*
19 (applying Ninth Circuit law).  So too here: Swarm's "'attempt[s] to manufacture a factual
20 question' [are] not sufficient to defeat [Amazon's] motion to dismiss."  *Id.*; *see also Boom!*
21 *Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 533 (Fed. Cir. 2021).

22       It is unsurprising that Swarm's Motion cannot identify anything inventive apart
23 from the abstract idea.  As this Court held, "it is clear from the specification" that the claims
24 "require[] 'no improved computer resources …, just already available computers, with their
25 already available basic functions, to use as tools in executing the claimed process.'"  Order
26 at 8 (quoting *SAP*, 898 F.3d at 1169-70).  The system can be implemented using "*any*
27 personal computer" with *any* "general purpose" commercially-available processors and
28 "*any* presently known … computer architecture"; the "task pool" can be *any* software or

Case No. 2:21-cv-00438-DJH          15        Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1     hardware for storing tasks; and the "agent" can be any software that allows communication,

2     such as a "network packet." *Supra* at 2-3. Swarm's FAC likewise admits the concept can

3     be implemented with "off-the-shelf components." FAC, Ex. R at 443.

4         Swarm's Motion does not, and cannot, identify anything in the FAC that alleges

5     inventiveness apart from the abstract scrum-board idea. The Motion should be denied for

6     that reason alone.

7            **2.**       **The FAC Does Not Otherwise Identify Anything Inventive**

8         The FAC does not otherwise identify anything inventive. As discussed, the FAC

9     relies on aspects of the abstract idea found in claim 1 of each patent, which cannot supply

10    an inventive concept as a matter of law. *See* FAC ¶¶ 124-147 ('004 patent cl. 1), 159-190

11    ('275 patent cl. 1), 201-244 ('777 patent cl. 1); *supra* at 6, 13-16. Apart from that, the FAC

12    merely recites the limitations found in the other claims and asserts in conclusory fashion

13    that those are unconventional and inventive. *See* FAC ¶¶ 148-158 ('004 patent), 191-200

14    ('275 patent), 244-253 ('777 patent). But, as Amazon explained, those additional claim

15    limitations either (1) stem from the abstract idea itself or (2) recite wholly conventional

16    computer features and, therefore, add nothing inventive. D.I. 29 at 7, 12-13 ('404 and '275

17    patent); *supra* at 9 ('777 patent). This Court agreed. Order at 6. The FAC's conclusory

18    reliance on those limitations does not preclude finding the claims ineligible on a motion to

19    dismiss. *See Simio*, 983 F.3d at 1364-65; *Dropbox*, 815 F. App'x at 538; *supra* at 14-15.

20         At most, Swarm's FAC alleges simply that the patent claims are "new" and "novel"

21    over prior art systems. *See, e.g.*, FAC ¶¶ 2 (alleging "revolutionary" and "new"), 119

22    (alleging "novel"). This Court has already correctly held that does not make the claims

23    eligible or create a fact issue relevant to § 101. Order at 7. Even if Swarm's claims were

24    "novel and nonobvious"—indeed, "'[g]roundbreaking, innovative, or even brilliant'"—

25    "that it is not enough for eligibility." *SAP*, 898 F.3d at 1163 (affirming ineligibility on

26    pleadings); *see also, e.g.*, *Yu*, 1 F.4th at 1045 (claim ineligible on motion to dismiss "even

27    if [it] recites novel subject matter" because "'[e]ligibility and novelty are separate

28    inquiries'" (quoting *Two-Way Media*, 874 F.3d at 1336, 1339-40)).

PH 635497.1

### 3.    Swarm's Reliance on Declarations Outside the Pleadings Is Improper And Unavailing

Swarm's submission of declarations does not preclude dismissal for two reasons.

First, those declarations are improper and irrelevant.  The issue here is whether the patent claims are ineligible as a matter of law.  Extrinsic evidence cannot change or supplement the absence of patent-eligible subject matter in the patents themselves.  For example, in *Yu*, the Federal Circuit recently reiterated that "patent eligibility can be determined at the Rule 12(b)(6) stage without the aid of expert testimony."  1 F.4th at 1046.  The Federal Circuit affirmed the district court's dismissal under § 101 and rejected the patentee's argument that the district court erred in refusing to consider its extrinsic evidence.  *Id.*  Similarly, in *Two-Way Media*, the Federal Circuit held that the district court properly declined to consider "expert report excerpts" in holding the claims ineligible on the pleadings.  874 F.3d at 1336; *see also Affinity Labs*, 838 F.3d at 1257, 1263 n.3 (affirming 12(b)(6) dismissal under § 101 and refusal to consider expert testimony); *Fast 101 Pty*, 834 F. App'x at 594 (affirming dismissal under § 101 and refusal to allow amendment or discovery).  This Court likewise need not, and should not, consider Swarm's declarations here, because they cannot alter that its patent claims are ineligible as a matter of law.

Second, in any event, the declarations (like Swarm's Motion and FAC) identify nothing inventive.  They, too, parrot the same conclusory assertions, rely on features stemming from the abstract idea itself, and fail to identify anything inventive apart from that abstract idea.  *See* Motion Exs. 3-4.  Consequently, even if the declarations are considered (they should not be), Swarm's last-ditch effort to manufacture a fact issue regarding the patents' inventive concept fails.

## V.    CONCLUSION

For the foregoing reasons, and those in this Court's Order (D.I. 64) and Amazon's prior arguments (D.I. 29, 37, 42-1, 50), Swarm's Motion should be denied for futility because the patent claims lack patent-eligible subject matter under § 101 as a matter of law.

PH 635497.1

1   DATED:  November 3, 2021

2                                           SPENCER FANE LLP

3

4                                           By  */s/ Andrew M. Federhar*
                                                Andrew M. Federhar
5                                               Jessica A. Gale

6                                               *Attorneys for Defendants Amazon.com, Inc.*
                                                *and Amazon Web Services, Inc.*
7

8                                           LATHAM & WATKINS LLP

9

10                                          By  */s/ Adam M. Greenfield*
11                                              Maximilian A. Grant
                                                Adam M. Greenfield
12                                              Gabriel K. Bell
                                                David A. Zucker
13                                              Kimberly Q. Li

14                                              *Attorneys for Defendants Amazon.com, Inc.*
15                                              *and Amazon Web Services, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:21-cv-00438-DJH          18          Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on November 3, 2021, a copy of the foregoing was filed

3

electronically using the Clerk of Court's CM/ECF system, which will provide notice to

4

all counsel of record.

5

Leo R. Beus
Michael K. Kelly

6

Christine N. Jones
Timothy J. Casey

7

BEUS GILBERT McGRODER PLLC

8

701 North 44th Street
Phoenix, AZ 85008-6504

9

Attorneys for Plaintiff
lbeus@beusgilbert.com

10

mkelly@beusgilbert.com

11

cjones@beusgilbert.com
tcasey@beusgilbert.com

12

13

*Attorneys for Plaintiff Swarm Technology, LLC*

14

15

*/s/ Andrew M. Federhar*

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:21-cv-00438-DJH        19        Defs.' Opp'n to Mot. for Leave to Amend

PH 635497.1