**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Swarm Technology LLC, | No. CV-21-00438-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Amazon.com Incorporated, et al., | |
| Defendants. | |

Swarm Technology, LLC ("Plaintiff") holds certain patents related to the design of multiprocessor systems.  In this action, Plaintiff accuses Amazon Web Services, Inc. and Amazon.com, Inc. (collectively, "Defendants") of infringing those patents in violation of 35 U.S.C. § 271.

Defendants previously moved to dismiss the complaint, arguing that Plaintiff's patents are ineligible under 35 U.S.C. § 101 because they are directed to an abstract idea—computerizing the well-known project management technique known as a "scrum board"—and do not contain any inventive concepts.  (Doc. 29.)  In September 2021, the judge previously assigned to the case granted Defendants' motion.  (Doc. 64.)  However, the Court also held that "[i]f [Plaintiff] believes it may amend its pleadings to state a viable claim, then it may file a motion for leave to file a first amended complaint to explain how it could address the deficiencies identified in this Order."  (*Id.* at 9.)

Plaintiff took advantage of this opportunity and filed a motion for leave to file a First Amended Complaint ("FAC") (Doc. 66), along with a proposed FAC (Doc. 66-13).

The proposed FAC differs from the original complaint in three notable respects: *first*, it contains an array of new allegations intended to establish that the patents at issue are eligible under § 101 (Doc. 66-1 at 30-60); *second*, it is ostensibly supported by detailed declarations from two experts, Dr. Brent Nelson of Brigham Young University (Doc. 66-14) and Dr. Douglas Sylvester of the Sandra Day O'Connor College of Law at Arizona State University (Doc. 66-15); and *third*, whereas the original complaint accused Defendants of infringing two patents—U.S. Patent No. 9,852,004 ("the '004 Patent") and No. 10,592,275 ("the '275 Patent")—held by Plaintiff, the FAC adds allegations regarding a third patent, U.S. Patent No. 9,146,777 ("the '777 Patent").

After Plaintiff's motion to amend became fully briefed (Docs. 68, 69), the previously assigned judge recused (Doc. 76).  The Court has now had an opportunity to review the entire docket in this matter, as well as the parties' many filings concerning developments in related administrative proceedings (Docs. 81, 84, 86-92) and a recent decision in which a different court rejected the sufficiency of Plaintiff's allegations regarding patent eligibility under § 101.  *Juniper Networks Inc. v. Swarm Tech.*, 2022 WL 3031211 (N.D. Cal. 2022).  As explained below, although the issue presents a close call, the Court concludes that the proposed FAC contains sufficient factual allegations to survive dismissal under § 101 at the Rule 12(b)(6) stage.  Accordingly, Plaintiff's motion for leave to amend is granted.

## DISCUSSION

I.    The September 2021 Dismissal Order And *Juniper*

Before addressing the parties' current arguments, it is helpful to begin by summarizing the September 2021 dismissal order and the recent *Juniper* decision, because both help frame the dispute now before the Court.

The September 2021 order begins by discussing the nature of the two patents then at issue, the '004 Patent and the '275 Patent.  (Doc. 64 at 1-2.)  It explains that they "purport[] to cover a 'processing architecture' whereby 'autonomous co-processors . . . proactively retrieve tasks from a task pool populated by a central processing unit.'"  (*Id.*)

Next, the September 2021 order identifies the relevant test for evaluating these patents' eligibility under § 101.  (*Id.* at 3.)  It explains that, under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the "two-step analysis" consists of (1) assessing whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea; and (2) if so, assessing whether the elements of the claims nevertheless "contain an inventive concept . . . that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  (*Id.*, cleaned up.)

As for the first step, the September 2021 order explains that the dispute turns on whether the patents may be characterized as "abstract because [they] simply computerize[] a well-known project management technique known as a 'scrum board,'" which "works by first having a project manager list tasks on sticky notes and post them on one side of a board.  As the team members collect and perform each task, they individually move the notes from the 'incomplete' side of the board to the other side, the 'complete' side of the board."  (*Id.* at 4-5.)  Although Plaintiff argued that "the scrum board comparison is a mischaracterization of its Patents" because they "provide[] a 'multiprocessor system with the speed of parallel processing' without traditional downsides," the Court disagreed, concluding that the "Patents are directed towards the abstract idea of a scrum board.  Although the Patents are aimed at allocating computer processing power in an efficient way, scrum boards also allocate human resources in an efficient way.  The Patents therefore are not aimed at a 'specific implementation of a solution' as much as they consist of 'generalized steps to be performed on a computer using conventional computer activity.'  The idea of a scrum board does not become non-abstract when limited to the computer environment.  Although there is no doubt that computers could perform tasks organized by a scrum board more efficiently than humans, the idea itself remains abstract."  (*Id.* at 5-6.)

As for the second step, Plaintiff argued the inventive-concept requirement should be deemed satisfied for three reasons: (1) it had overcome previous objections to its patents under 35 U.S.C. §§ 102-03; (2) "the Patents ushered in a 'new parallel processing paradigm' that dramatically increases computer performance"; and (3) "whether its Patents

represent something that genuinely improves computer performance is a question of fact, which would preclude a finding that the Patents are ineligible on a motion to dismiss." (*Id.* at 7-8.)   The Court disagreed.   As for Plaintiff's first argument, the Court identified "caselaw show[ing] that whether a patent is novel or nonobvious [under §§ 102/103] is irrelevant to the *Alice* analysis." (*Id.* at 7.)   As for Plaintiff's second argument, the Court held that "it is not enough that [Plaintiff] claim its Patents are novel.   The Court has already found that the Patents are abstract in that they describe a computerized scrum board, and simply applying an abstract idea to computers, standing alone, cannot be an innovative concept." (*Id.*)   As for Plaintiff's third argument, the Court held that although "the Complaint alleged that the Patents are designed to address two problems related to parallel computer processing"—namely, "too much processing bandwidth was being occupied in assigning tasks to 'slave' processors" and "many processors were being left idle while awaiting a task"—these allegations did not appear in the patents themselves. (*Id.* at 7-8.)   The Court further held that "[a]lthough [Plaintiff] makes the conclusory assertion that its Patents contain claim elements that, when combined, 'are not well-understood, routine or conventional,' [Plaintiff] fails to elaborate." (*Id.* at 8.)   The Court continued: "The Court doubts that [Plaintiff] could point to a specific inventive concept.   It is plain from the specification of the '004 Patent that it requires 'no improved computer resources . . . , just already available computers, with their already available basic functions, to use as tools in executing the claimed process.'   For example, the specification contemplates a person playing video games on their laptop and tapping into the processing power on a nearby smartphone, 'thereby enhancing the video game experience.'   This appears to be directed towards 'generic components,' such as laptops and smartphones, 'performing conventional activities,' such as playing video games.   [Plaintiff] may argue that the allocation of processing power between the laptop and smartphone is the specific inventive concept, but this allocation is based solely upon the abstract idea of a scrum board." (*Id.* at 8-9.)   Thus, the Court concluded that "[w]ithout specific and concrete allegations of specific improvements to computer technology, all [Plaintiff] has alleged is an improvement to the

speed and efficiency of computer systems stemming from the implementation of an abstract idea.  The improved efficiencies from the application of an abstract idea are not an inventive concept."  (*Id.* at 9.)

Meanwhile, *Juniper* is an action in the Northern District of California in which the plaintiff (Juniper Networks, Inc.) seeks a declaration that its patents do not infringe the '004 Patent, the '275 Patent, or the '777 Patent.  2022 WL 3031211 at *1.  In response, Plaintiff asserted counterclaims of infringement, which Juniper then moved to dismiss "on the grounds that all claims of the '777 patent, '004 patent, and '275 patent are directed to patent-ineligible subject matter under 35 U.S.C. § 101."  *Id.*  In an order filed on August 1, 2022, the district court granted Juniper's motion to dismiss.  *Id.*

Notably, the court did not address the sufficiency of Plaintiff's claims regarding the '004 and '275 Patents.  *Id.*  Instead, the court held that because this Court had already determined those patents to be invalid under § 101 in the September 2021 order, and Plaintiff had in turn filed a motion to amend, it did not make sense to relitigate the § 101 eligibility analysis regarding the '004 Patent or the '275 Patent while the motion to amend remained pending.  *Id.*  Thus, the court dismissed the counterclaims regarding the '004 Patent and the '275 Patent "without prejudice . . . as developments in the District of Arizona or on appeal warrant."  *Id.* at *1-2.

As for Plaintiff's counterclaim regarding the '777 Patent, the court began by addressing (as this Court did in the September 2021 order) whether, under the first step of the *Alice* framework, the claims should be considered directed toward an abstract idea because they were analogous to a scrum board.  *Id.* at *5-6.  Plaintiff argued that "the '777 patent is not directed to an abstract idea because it is directed to an improvement in how computers operate and computer efficiency" and "teaches a way to reconfigure computer systems to function more efficiently," but the court disagreed, emphasizing that Plaintiff "does not point to a specific improvement to computer technology identified in the '777 patent" and that "to the extent that [Plaintiff] points to the 'monolithic integrated circuit' as an element that is non-abstract, that element is limited to the '004 and '275 patents and

- 5 -

is not present in any claims of the '777 patent." *Id.* at *6.

As for the second step of the *Alice* framework, Plaintiff sought to establish that "its claim represents an inventive concept" by "listing out seven elements that [Plaintiff] believes were not well-understood, routine, or conventional," but the court determined these arguments were conclusory because Plaintiff's "brief is entirely devoid of any explanation for how these seven elements were not well-understood, routine, or conventional. . . . That is precisely where [Plaintiff] dropped the ball.  It did not plausibly allege, based on non-conclusory and factual statements, that the '777 patent embodies an inventive concept.  The conclusory allegations in the counterclaims will not do." *Id.* at *6-7.  The court concluded by expressing "some doubt that [Plaintiff] can amend around this problem" but still granted leave to amend.  *Id.* at *7.

## II.   Legal Standard

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'"  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  "This policy is 'to be applied with extreme liberality.'"  *Id.* (citation omitted).  Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

Here, the sole ground on which Defendants oppose the amendment request is futility.  (Doc. 68 at 1.)  "An amended complaint is futile where it would be subject to dismissal under Rule 12(b)(6)."  *Reed v. Nevada*, 2021 WL 3722879, *2 (D. Nev. 2021) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998)); *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").  Thus, to determine whether amendment is futile, the Court must consider whether the proposed FAC could survive a § 101 eligibility analysis under Rule 12(b)(6).

III.     The Parties' Arguments

Plaintiff argues its amendment request should be granted because its proposed FAC "contains specific and concrete allegations" sufficient to establish patentability under both steps of the *Alice* framework.  (Doc. 66.)  As for the first step, Plaintiff argues that its "invention is not directed at organizing human behavior, and is legally non-abstract" because it "invented a new computer processing architecture that reconfigures the elements of a computer's processing system and introduces new code to operate those elements.  In combination, these elements provide an improvement to the functionality of the computer itself.  [Plaintiff's] new architecture revolutionizes the interaction of computer components and addresses technology issues that only arise in a computer context.  Simply put, [Plaintiff's] new architecture provides a new way for computer parts (e.g., a processing system) to interact with each other by modifying existing parts (controller and co-processors) and interposing a new intermediary part (task pool) to manage communication among all the parts."  (*Id.* at 1-2.)  Plaintiff contends that, under *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), improvements to "computer functionality" are necessarily non-abstract and the '004 Patent qualifies as such an improvement because it "recite[s] improvements to computer functionality, including by using co-processors that act autonomously and proactively to retrieve, process, and complete tasks without communication between the co-processors and the [Central Processing Unit ('CPU')].  In contrast, conventional coprocessors wait idly for instructions from a CPU."  (*Id.* at 11-16.)  Plaintiff further notes that, in *Enfish*, the Federal Circuit stated that an improvement to "chip architecture" would qualify as a non-abstract improvement and contends that the improvements described in its patents qualify as chip architecture improvements because, as discussed in the Nelson declaration, computer and multiprocessor architectures can be described as "the structure, organization, and behavior of functional components within a computer processing system."  (*Id.* at 12, 16-17.)  As for the second step, Plaintiff specifically identifies the following five inventive concepts that are alleged in the FAC: (1) "a controller configured to populate a task pool with a plurality of first tasks and a plurality

of second tasks" ('004 Patent); (2) "a first co-processor configured to . . . retrieve a first task from the task pool . . . without any communication between the first co-processor and the controller; and a second co-processor configured to . . . retrieve a second task from the task pool . . . without any communication between the second co-processor and the controller" ('004 Patent); (3) "a task pool" interposed between "a controller" and "co-processors" ('275 Patent); (4) "configured to dynamically accept the first co-processor, the second co-processor, and an additional co-processor" on a "plug-and-play basis without any communication with the controller" ('275 Patent); and (5) "the first solidarity cell comprising a first agent configured to proactively retrieve, from the task pool, without requiring an instruction from the CPU, a matching task for the solidarity cell to process" ('777 Patent).  (*Id.* at 7-11.)  Plaintiff further notes that, with respect to each claimed inventive concept, the Nelson declaration establishes that the feature was not well-understood, routine, or conventional in the field or industry.  (*Id.*)

Defendants respond that amendment would be futile.  (Doc. 68.)  According to Defendants, "although the FAC inserted an additional 30 pages and a third patent (the '777 patent) that is materially the same as the other two, it nowhere identifies an inventive concept apart from the abstract scrum board idea."  (*Id.* at 5.)  Defendants contend that "parallel processing using multiple co-processors is nothing new" and "the patents' only purported improvement is to collect the necessary tasks in a 'task pool,' and then the co-processors autonomously retrieve and complete the tasks," but all the claims remain directed to the abstract idea of a scrum board.  (*Id.* at 2, 8, 14.)  Defendants also contend that the purported benefit of greater efficiency simply flows from implementing the abstract idea itself, and therefore does not make the claims any less abstract.  (*Id.* at 13.)  Defendants also argue that the claim specifications admit that the invention does not require any improved computer technology or any particular implementation.  (*Id.* at 2-3.)  Additionally, Defendants contend that the claims themselves say nothing about a "chip architecture," making it an "unclaimed detail," and Plaintiff "cannot rely on such unclaimed details to supply the patent-eligible content."  (*Id.* at 10-11.)  As for the

declarations, Defendants argue they are improper and irrelevant—"[e]xtrinsic evidence cannot change or supplement the absence of patent-eligible subject matter in the patents themselves"—and, in any event, they identify nothing inventive apart from the abstract idea. (*Id.* at 17.)  Finally, Defendants note that Claim 1 of the '004 Patent remains representative for purposes of § 101 eligibility because Plaintiff does not argue there are any meaningful differences between the claims (and, thus, the Court needn't analyze each claim separately). (*Id.* at 4 & n.5, 8.)

In reply, Plaintiff argues that, even assuming "interposing a task pool between a CPU and co-processors amounts to an abstract idea because the task pool is tantamount to a scrum board . . . , that abstract idea is only the beginning; Swarm's claims add 'significantly more' to the 'abstract idea.'" (Doc. 69 at 1-2.)  In support, Plaintiff provides a few "non-limiting" examples, including a "plug-and-play" concept (which "allows an unlimited number of computational tasks to be performed by an unlimited number of task performers (co-processors) while communicating only with the task pool") and a "retrieval scheme" concept (which enables co-processors to "retrieve tasks from the task pool without requiring instructions from the CPU" and allows "one CPU to manage an unlimited number of task managers (networks) that interact with an unlimited number of task performers (co-processors)"). (*Id.* at 2.)  Plaintiff contends these concepts "had never been done before" and provide technical solutions to interoperability problems in networks and computers by "unlocking unlimited scalability" and "allowing simultaneous management of multiple networks," respectively. (*Id.* at 2, 4-5.)  Plaintiff also argues that, "[a]t this juncture, [it] is not required to *prove* that its inventive concepts are unconventional.  Rather, [its] FAC need only properly *allege* that the claims recite more than 'well-understood, routine' activities," which it does. (*Id.* at 7.)  As for the use of off-the-shelf, conventional computer technology, Plaintiff reiterates that Defendants are mistaken—Plaintiff's invention requires the computers to be "first modified by changing their operating software to implement [the] new architecture." (*Id.* at 8.)  Finally, Plaintiff argues that Claim 1 of the '004 Patent is not representative of Claim 1 of the '777 Patent (because that patent contains

1  additional elements not found in the '004 Patent), nor is it representative of any of the other

2  claims (as Claims 2-12 of the '004 Patent, Claims 2-17 of the '275 Patent, and Claims 1-

3  14 of the '777 Patent were first asserted in the FAC, and involve separate, non-abstract

4  limitations).  (*Id.* at 8-9.)

5  IV.  Analysis

6       A.  **Section 101 Eligibility**

7            Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process,

8  machine, manufacture, or composition of matter, or any new and useful improvement

9  thereof, may obtain a patent therefor, subject to the conditions and requirements of this

10  title."  However, the Supreme Court has "long held that this provision contains an

11  important implicit exception: Laws of nature, natural phenomena, and abstract ideas are

12  not patentable."  *Alice*, 573 U.S. at 216 (citation omitted).  "[W]hether a claim recites

13  patent-eligible subject matter is a question of law which may contain disputes over

14  underlying facts."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

15           The Supreme Court has established a two-step test "for distinguishing patents that

16  claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-

17  eligible applications of those concepts."  *Alice*, 573 U.S. at 217 (citing *Mayo Collaborative

18  Servs. v. Prometheus Lab's, Inc.*, 566 U.S. 66, 77-78 (2012)).  First, the court must

19  "determine whether the claims at issue are directed to one of those patent-ineligible

20  concepts."  *Id.* (citation omitted).  However, because "all inventions at some level embody,

21  use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas,"

22  *Mayo*, 566 U.S. at 71, "courts must be careful to avoid oversimplifying the claims by

23  looking at them generally and failing to account for the specific requirements of the

24  claims."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir.

25  2016) (citation and internal quotation marks omitted).  *See also Enfish*, 822 F.3d at 1337

26  ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the

27  language of the claims all but ensures that the exceptions to § 101 swallow the rule.").

28           "Because there is no conclusive method of determining what constitutes an 'abstract

idea' that meets the first step of the *Alice* framework, courts compare the claims at issue to those claims from previous cases, already determined to be directed to an abstract idea. 'Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear.' This difficulty is particularly pronounced in the context of patent claims related to computer technology." *Crypto Research, LLC, v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 680-81 (E.D.N.Y. 2017) (citations omitted). On the one hand, "the use of a computer to implement a fundamental economic or conventional business practice does not, by itself, render the claims patent eligible." *Id.* at 681. On the other hand, "the Federal Circuit has held that some developments in computer-related technology, in which the focus of the claims is on solutions 'necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks,' or on 'improvement to computer functionality itself,' are not directed to an abstract idea." *Id.* (citations omitted).

If the first step of the *Alice* analysis shows that the claims are directed to an abstract idea, the second step addresses whether the claims include an "inventive concept"—that is, whether "an element or combination of elements . . . is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (cleaned up). "The second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (cleaned up). "[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

## B. **Preliminary Matters**

Before turning to the heart of the dispute—whether the factual allegations in the proposed FAC are sufficient to survive a motion to dismiss with respect to § 101 eligibility—it is necessary to address a few preliminary matters.

First, to the extent Defendants contend it was improper for Plaintiff to add allegations regarding the '777 Patent to the proposed FAC,[1] the Court disagrees.  In the September 2021 order, the Court did not place any specific limitations on the scope of the anticipated amendment request, other than to explain that the purpose of any proposed amendment should be to "address the deficiencies identified in this Order."  (Doc. 64 at 9-10.)  Those deficiencies, in turn, related to the insufficiency of the factual allegations in the original complaint under both steps of the *Alice* test.  Because the new allegations in the FAC related to the '777 Patent are intended to address those deficiencies, they do not fall outside the scope of the amendment authorization.  Furthermore, Defendants do not contend that the new allegations regarding the '777 Patent are somehow time-barred or unfairly prejudicial.[2]  As noted, the sole ground on which Defendants oppose the amendment request is futility.  Thus, the presence of the new allegations regarding the '777 Patent does not provide a basis for denying the amendment request.

Second, although the proposed FAC identifies an array of different claims appearing in Plaintiff's patents, "[t]he Federal Circuit has held that the district court need not address each claim of the asserted patents individually.  Instead, if the district court determines that the claims are substantially similar and linked to the same abstract idea, the court may consider a representative claim."  *Crypto Research*, 236 F. Supp. 3d at 680 (citation omitted).  Here, as in the September 2021 order, the Court agrees with Defendants that Claim 1 of the '004 Patent recites a system comprising a task pool, a controller, and co-processors completing tasks, which is substantially similar to Claim 1 of the '275 Patent and Claim 1 of the '777 Patent.  Similarly, upon the Court's review, the dependent claims—that is, Claims 2-12 of the '004 Patent, Claims 2-17 of the '275 Patent, and Claims 2-14 of

---

[1]	Doc. 68 at 9 (describing Plaintiff's "attempt to add a third, related, patent" as "unsanctioned").

[2]	Plaintiff notified Defendants of the issuance of the '777 Patent before the complaint was filed (Doc. 1 ¶¶ 93, 96) and Defendants themselves emphasize that the '777 Patent relates to and shares largely identical specifications with the '004 and '275 Patents (*see* Doc. 68 at 2, 4, 9).  Additionally, the remaining claims of the '004 and '275 Patents, and the claims of the '777 Patent, are alleged to have been infringed by the same products (AWS IoT Core and AWS IoT Greengrass) identified in the original complaint.  (Doc. 66-1 ¶¶ 94, 269, 281-82.)

the '777 Patent—flow directly from Claim 1 of their respective patents and largely recite the same content.  (*See* Doc. 66-2 at 16-17, 25-26, 42-43.)  Consequently, these claims warrant similar substantive treatment, and the Court will again consider Claim 1 of the '004 Patent to be representative.

Third, the Court agrees with Defendants that the Nelson and Sylvester declarations may not be considered at this juncture of the case.  The narrow issue to be decided here is whether Plaintiff's motion to amend should be denied on futility grounds.  The futility analysis, in turn, rises and falls with the sufficiency of the proposed FAC under Rule 12(b)(6).  And although the sufficiency analysis requires consideration of some highly technical concepts, the Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).  Thus, the mere fact that Plaintiff is defending against a § 101 challenge does not mean that Plaintiff is entitled to introduce expert declarations at the motion-to-dismiss stage.

Nor do the Nelson and Sylvester declarations qualify as the sorts of materials that a district court would ordinarily be allowed to consider when ruling on a Rule 12(b)(6) challenge.  It is hornbook law that "a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up).  "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).  It is difficult to see how that Nelson and Sylvester declarations could fall within any of these exceptions.  They are not attached to the proposed FAC (at the risk of putting form over substance, they were filed as attachments to the motion to amend, not as attachments to the proposed FAC),[3] they are not incorporated by reference in the proposed

---

[3]      Doc. 66 at introductory page ("Plaintiff . . . respectfully moves the Court for leave to file the attached redlined [FAC] (Exhibit 1).  As a courtesy, a clean copy of the FAC is also attached as Exhibit 2.  This Motion for Leave to file the FAC . . . is made pursuant to Fed. R. Civ. P. 15(a)(2) and supported by the Declarations of Dr. Brent Nelson and Dr.

FAC (the words "Nelson" and "Sylvester" do not appear anywhere in the proposed FAC), and they are not subject to judicial notice. *Cf. Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019) (affirming district court's refusal to consider patentee's expert declaration when ruling on a § 101-based motion to dismiss in part because "[t]he declaration does not 'merge into the pleadings,' as the complaint does not reference it or otherwise depend on it. Nor is the declaration an official public record, another type of document a court may consider with the pleadings."). Indeed, it appears that Plaintiff's purpose in submitting the declarations was to prove the veracity of the factual allegations in the FAC. (Doc. 69 at 10 ["As an expert with decades of computing experience, Dr. Nelson confirms the factual allegations in ¶¶ 178-181 of the FAC."].) But there is no need to prove anything at the Rule 12(b)(6) stage—"[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

C.   **Merits**

The September 2021 order concluded that the "Patents are directed towards the abstract idea of a scrum board" for purposes of step one of the *Alice* analysis because the factual allegations in the original complaint merely showed that "the Patents are aimed at allocating computer processing power in an efficient way," yet "scrum boards also allocate human resources in an efficient way." (Doc. 64 at 5-6.) The September 2021 order stated that "[t]he Patents therefore are not aimed at a 'specific implementation of a solution' as much as they consist of 'generalized steps to be performed on a computer using conventional computer activity.'" (*Id.* at 5-6.) Similarly, in *Juniper*, although Plaintiff attempted to argue "that the '777 patent teaches a way to reconfigure computer systems to function more efficiently," the court concluded this argument was not supported by the record because "[Plaintiff] does not point to a specific improvement to computer technology identified in the '777 patent. Instead, [Plaintiff] quotes language from the

Douglas Sylvester attached as Exhibits 3 . . . and 4 . . . .").

patent that the system 'may be implemented retroactively on any computer or computer network having an operating system that may be modified or otherwise configured to implement the functionality described.'  This falls short of teaching a specific improvement to computer technology, instead simply reconfiguring traditional computer networks to operate as claimed in the '777 patent."  2022 WL 3031211 at *6.

In an effort to address the criticisms in the September 2021 order, the proposed FAC adds detailed allegations regarding computer-specific functionality improvements.  For example, the proposed FAC alleges that, "[t]aken together, the controller, task pool, and co-processors confer a substantial advantage over prior art processing systems by allowing different types of co-processors to interact with the task pool without significantly compromising their individual performance.  Claim 1 [of the '004 Patent] thus focuses on improvements to computer functionality, as opposed to merely being directed to an abstract idea."  (Doc. 66-1 at 31 ¶ 127.)  Elsewhere, the proposed FAC elaborates as to why these functionality improvements are computer-specific: "[C]onventional processors include a CPU and one or more co-processors, where the CPU partitions the computational requirements into tasks and distributes the tasks to co-processors.  Consequently, a significant amount of CPU bandwidth is consumed by task distribution; waiting for tasks to be completed before distributing new tasks (often with dependencies on previous tasks); responding to interrupts from co-processors when a task is completed; and responding to other messages from co-processors.  To address these shortcomings, [the '004 Patent] invented a revolutionary new parallel processing paradigm, including co-processors configured to proactively retrieve new tasks from the task pool without having to communicate directly with (or wait for) the CPU."  (*Id.* at 32 ¶¶ 131-32.)

In the tentative order issued before oral argument, the Court suggested these new allegations could be viewed as supplying important new details that were missing from the complaints deemed insufficient in the September 2021 order and in *Juniper*.  However, during oral argument, Defendants identified various reasons why the proposed FAC's factual allegations should be viewed as essentially indistinguishable from the allegations

that were analyzed in those orders.  (Doc. 97-1.)  Upon reflection, Defendants' argument has some force—although the new paragraphs in the proposed FAC discussing computer-specific functionality improvements are more detailed than the allegations on that topic that appeared in the original complaint, they can be viewed as raising the same overarching points.

Despite this, the Court stands by the conclusion in the tentative order that the factual allegations in the proposed FAC are sufficient to avoid dismissal under step one of the *Alice* framework.[4]  "[T]he first step in the *Alice* inquiry . . . asks whether the . . . focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."  *Enfish*, 822 F.3d at 1335-36.  Where "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity," the claims are not abstract.  *Id.* at 1336.  *See also Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018) ("[C]laim 1 of the '941 patent is not directed to an abstract idea.  Improving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem. . . .  In short, claim 1 of the '941 patent is directed to a solution to a computer-functionality problem . . . [and] therefore passes muster under *Alice* step one, as it is not directed to patent-ineligible subject matter."); *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (contrasting *Enfish*, where "the claims at issue focused . . . on a specific

---

[4]      To the extent this conclusion is inconsistent with the conclusions reached in the September 2021 order and in *Juniper*, the Court acknowledges that when two experienced and esteemed jurists have reached the same conclusion on a complicated issue such as the one presented here, a third judge should think long and hard before going a different direction.  Nevertheless, the analysis below represents the undersigned's best attempt to independently evaluate the sufficiency of the proposed FAC under the complicated and often difficult-to-reconcile law pertaining to *Alice*'s first step.  *See generally Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017) (acknowledging "the difficulty inherent in delineating the contours of an abstract idea"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) ("Distinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult, as the line separating the two is not always clear."); *Crypto Research*, 236 F. Supp. 3d at 680-81 ("This difficulty is particularly pronounced in the context of patent claims related to computer technology.").

improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data," with "[t]he present case," where "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools").

Here, the specification of the '004 Patent states that "[t]he present invention generally relates to parallel-process computing, and particularly to a processing architecture which involves autonomous co-processors configured to proactively retrieve tasks from a task pool population by a central processing unit." (Doc. 66-2 at 10.) It explains that "[p]resently known multiprocessing approaches are disadvantageous in that a significant amount of CPU bandwidth is consumed by task distribution; waiting for tasks to be completed before distributing new tasks (often with dependencies on previous tasks); responding to interrupts from co-processors when a task is completed; and responding to other messages from co-processors." (*Id.*) Given these existing problems, the specification states that "[a] multiprocessor architecture is . . . needed which reduces CPU management overhead, and which also more effectively harnesses and exploits available co-processing resources." (*Id.*) The specification explains that the claims in the '004 Patent address and improve upon these computer-functionality problems in various ways, including by enabling "the CPU [to] communicate[] directly with the task pool, and communicate[] indirectly with the co-processors through the task pool," and that, "[as] a result, the co-processors work together 'in solidarity' with one another and with the task pool to complete aggregate computations requirements by autonomously retrieving and completing individual tasks which may or may not be inter-related." (*Id.*) It continues: "Those skilled in the art will appreciate that interoperability among the CPU and co-processors may be facilitated by configuring the CPU to compose and/or structure tasks at a level of abstraction which is independent of the instruction set architecture associated with the various co-processors, thereby allowing the components to communicate at a task level rather than an instruction level. As such, devices and their associated processors may be added to a network on a 'plug and play' basis. Another aspect of this invention provides

interoperability within a heterogenous array of CPUs with different instruction set architectures." (*Id.* at 11.)

Given this backdrop, the new allegation in the proposed FAC that "[c]laim 1 . . . focuses on improvements to computer functionality, as opposed to merely being directed to an abstract idea" (Doc. 66-1 at 31 ¶ 127) is non-conclusory and plausible. The claims in the '004 Patent expressly focus on addressing existing problems in computer functionality—"Presently known multiprocessing approaches are disadvantageous in that a significant amount of CPU bandwidth is consumed by task distribution; waiting for tasks to be completed before distributing new tasks (often with dependencies on previous tasks); responding to interrupts from co-processors when a task is completed; and responding to other messages from co-processors"—by creating a new "multiprocessor architecture" that "reduces CPU management overhead" and "more effectively harnesses and exploits available co-processing resources." As noted, the Federal Circuit has held that claimed improvements should be considered non-abstract at step one where "the plain focus of the claims is on an improvement to computer functionality itself" (*Enfish*), or where the claims are directed at "a solution to a computer-specific functionality problem" (*Ancora*), or where the claims are directed at "a specific improvement . . . in how computers carry out one of their basis functions of storage and retrieval of data" (*Electric Power Group*). The proposed FAC specifically alleges that Claim 1 of the '004 Patent is intended to achieve such improvements and those allegations are non-conclusory and plausible because they are grounded in the contents of the '004 Patent itself.

Notwithstanding all of this, Defendants argue that the alleged functionality improvements must be considered abstract because they are analogous to how a scrum board enhances the efficiency of human decisionmaking. The Court understands the analogy but disagrees that it carries the day for purposes of step one. In *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018), which Plaintiff cited during oral argument, the court confronted a similar argument. There, Google argued that a claim "directed to a specific method for navigating through three-dimensional electronic

spreadsheets" was ineligible under § 101 because courts have "repeatedly found that claims directed to methods of organizing and presenting information are abstract." *Id.* at 1010. Google elaborated "that humans have long used tabs to organize information.  It cites tabbed notebooks, binder dividers, file folders, and sticky Post-it notes as well-known examples of organizing information using tabs." *Id.* at 1011.  The Federal Circuit rejected this argument and reversed the district court's determination that Google was entitled to judgment on the pleadings with respect to the § 101 challenge, explaining:

> We agree that tabs existed outside the context of electronic spreadsheets prior to the claimed invention.  *It is not enough, however, to merely trace the invention to some real-world analogy*.  The eligibility question is not whether anyone has ever used tabs to organize information.  That question is reserved for §§ 102 and 103.  The question of abstraction is whether the claim is 'directed to' the abstract idea itself.  We must consider the claim as a whole to determine whether the claim is directed to an abstract idea or something more.  Google fails to appreciate the functional improvement achieved by the specifically recited notebook tabs in the claimed method.

*Id.* (emphasis added).  Thus, the court concluded that the claim "is not abstract under *Alice* step one" and found it unnecessary to "reach *Alice* step two." *Id.*  Here, too, even if the scrum-board analogy has some merit, it is not dispositive (at least at the motion-to-dismiss stage) in light of the FAC's non-conclusory and plausible allegations of computer-specific functionality improvements.

In a related vein, to the extent Defendants argue the claimed improvements are not really computer-specific functionality improvements, but simply the efficiencies that would arise in any setting from the use of a scrum board, the Court cannot see how this sort of assertion could be resolved in Defendants' favor at the current stage of the case. Although Defendants are correct (Doc. 97-1 at 2) that the Federal Circuit has frequently made *Alice* ineligibility determinations at the pleading stage, this does not mean the determination should always be made at that stage.  *See, e.g., Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1261-62 (Fed. Cir. 2017) ("Configuring the memory system based on the type of processor connected to the memory system is the improvement in computer technology to which the claims are directed.  *Alice* requires no more from the

claims or the specification to support our conclusion that the claims are not directed to an abstract idea.  This conclusion is particularly proper on a motion to dismiss under Rule 12(b)(6), where all factual inferences drawn from the specification must be weighed in favor of Visual Memory, the non-moving party.").  Because the Court lacks independent knowledge of how parallel-process computing works, which is not a matter of common sense, it would be inappropriate to simply disregard the proposed FAC's allegation that the claimed improvements are intended to overcome computer-related functionality problems. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  Defendants may very well be able to establish at a future stage of the case that the claimed functionality improvements are not computer-specific, but it would be premature to make that determination now.

Finally, the Court disagrees with Defendants' contention, raised during oral argument, that *Yu v. Apple*, 1 F.4th 1040 (Fed. Cir. 2021), compels a ruling in their favor at step one.  There, the claim was expressly directed at the "idea of taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way." *Id.* at 1043.  *See also id.* ("[W]e note that claim 1 results in 'producing a resultant digital image from said first digital image enhanced with said second digital image.'").  Additionally, the plaintiff did "not dispute that . . . the idea and practice of using multiple pictures to enhance each other has been known by photographers for over a century." *Id.* As a result, the Federal Circuit (over Judge Newman's dissent) rejected the patentholder's argument "that the asserted claims 'are directed to a patent-eligible improvement in digital camera functionality' by 'providing a specific solution' to problems such as 'low resolution cause by low pixel counts' and 'inability to show vivid colors caused by limited pixel depth." *Id.* at 1044.  This was because "claim 1's solution to those problems is the abstract idea itself—to take one image and 'enhance' it with another." *Id.*  Here, in contrast, the FAC plausibly alleges that Claim 1 of the '004 Patent is not directed at using computers as a *tool* for accomplishing some abstract end (such as enhancing an image), but instead is

directed at an improvement to computer functionality *itself*.  And where "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity," the claims are not abstract.  *Enfish*, 822 F.3d at 1336.

Given these conclusions, it is unnecessary to address whether the proposed FAC also sufficiently alleges inventive concepts to survive dismissal under step two.  *Data Engine*, 906 F.3d at 1011.  During oral argument, Defendants raised various points that would otherwise require careful review and potential reconsideration of the tentative ruling's step-two analysis.  Because Plaintiff's amendment request has been pending for an unusually long time and is serving as the bottleneck for several other developments, including future proceedings in *Juniper* and, as Defendants' counsel explained during oral argument, a potential motion to stay in this action based on *Juniper* and/or pending IPR proceedings (Doc. 92), the Court concludes that it makes sense to rule now rather than continue to ponder whether step two provides an alternative basis for granting the amendment request.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to amend (Doc. 66) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff must file its proposed FAC (Doc. 66-13) within seven days of the issuance of this order.

Dated this 22nd day of August, 2022.

_____
Dominic W. Lanza
United States District Judge

- 21 -